## Case No. 9,044.

### MANNING v. HOOVER.

[Abb. Adm. 188;[1] 12 Betts, D. C. MS. 5.]

District Court, S. D. New York. Feb., 1848.

CARRIERS — SHORTAGE — NO BILL OF LADING — AMOUNT SHIPPED—MODE OF ASCERTAINING QUANTITY.

1. A shipper of a cargo of grain who takes no bill of lading from the carrier, is bound, in an action brought to recover for short delivery, to prove the amount delivered by him to the carrier to be transported.

[Cited in The Pietro G., 38 Fed. 149.]

2. A variance between the amount of a cargo of grain as stated in the measurer's bill in lading it on board, and the amount of such cargo as ascertained on delivery at the port of consignment, may be explained by showing that the mode of ascertaining the quantity is such that similar variations are necessarily of frequent occurrence.

Compare Manchester v. Milne [Case No. 9,007].

This was a libel in personam, by Still Manning against Norman C. Hoover, owner of the sloop Cornet, to recover damages for non-performance of a contract of affreightment. It appeared, in this case, that the libellant was the owner of 1857 bushels of corn, and 76 bushels of wheat, stored at the city of Brooklyn. The defendant contracted to carry the grain in his sloop to the city of New York, at a specified price per bushel. He received the corn on board his vessel, and was paid freight for the whole quantity; but the quantity actually delivered by him at New York, as there measured by weight, was only 1759 bushels, 24 lbs., thus leaving a deficiency of 97 bushels; to recover for which this action was brought. The defence was, that under the circumstances of the case, the loss was to be attributed, not to any default on the part of the vessel, but to inaccuracy of measurement, and to waste necessarily incidental to the lading and unlading of such a cargo. The evidence upon this point is fully stated in the opinion.

D. McMahon, Jr., for libellant.

I. It is unnecessary for the libellant to show negligence on the part of the carrier. It is sufficient to show the shipment of a certain quantity, and it is for the carrier to show either a complete delivery or an excuse by vis major. He is liable for all thefts, robberies, and embezzlements by any of the crew, or by any other person, although he may have exercised every possible vigilance to prevent the loss. Story, Bailm. 528. And the mere fact that the owner or his servants go with the goods, if the other circumstances of the case do not exclude the custody of the carrier, will not of itself exempt him from responsibility. Id. 533.

II. The master and owners of a ship are responsible for the goods which they have undertaken to carry, if stolen or embezzled by the crew, or any other person, though no fault or negligence may be imputable to them. Schieffelin v. Harvey, 6 Johns. 170.

III. The master and owners of vessels who undertake to carry goods for hire are liable as common carriers, whether the transportation be from port to port within the state, or beyond sea, at home or abroad; and they are answerable as well by the marine law as the common law, for all loss not arising from inevitable accident, or such as could not be foreseen or prevented. Elliott v. Rossell, 10 Johns. 1; Kemp v. Coughtry, 11 Johns. 107; McArthur v. Sears, 21 Wend. 190.

IV. Where the goods are embezzled or lost during the voyage, the master is bound to answer for the value of the goods missing, according to the clear net value of goods of like kind and quantity at the port of delivery. Watkinson v. Laughton, 8 Johns. 213.

V. If freight be paid in advance, and the goods be not carried by reason of any event not imputable to the shipper, it may be recovered back. Watson v. Duykinck, 3 Johns. 335.

VI. In an action for the non-delivery of goods, pursuant to a contract of affreightment, the measure of damages is the value of the goods at the port of destination, but without interest, unless there has been fraud or misconduct on the part of the defendant. Amory v. McGregor, 15 Johns. 24, 38.

BETTS, District Judge. Assuming the subject-matter of this action to be within the cognizance of this court, the question upon the merits is whether the respondent is chargeable for the quantity of grain represented in the bill of measurement to have been delivered on board his vessel for transportation. The evidence shows that the respondent had no agency in measuring or weighing the grain when put on board, or at its unlading and delivery. The libellant employed his own agents to transact that business at each end of the voyage. The owners of the store where the grain was on storage would not permit the measurer employed by the libellant to make the weight or measure of the corn; their clerk measured it and kept his own tally, and by his certificate or return of weight and measure it appeared that there was put on board the lighter the quantity in bushels claimed by the libellant.

The statute of this state fixes the legal capacity of the bushel by measurement (1 Rev. St., 2d Ed., c. 621, § 19), and the weight of corn which shall constitute a bushel at fifty-six pounds. Id. § 40. The contract for the carriage of this cargo was by the bushel. No bill of lading appears to have been executed, but the certificate or account rendered by the warehouseman of the quantity of corn delivered to the vessel was accepted and acted upon as accurate by the parties, in paying and receiving the freight for its transportation.

[1] [Reported by Abbott Brothers.]

The method commonly pursued in this port by dealers in grain for ascertaining the quantity, (and which was adopted substantially in this case,) is to measure it in a half-bushel by tale, tallying at each count of five measures, and to weigh one measure out of ten tallies, or one bushel out of every hundred measured, or other assumed proportion. The multiplication of the sum of the tales by fifty-six is assumed to show the quantity of bushels contained in the mass. The warehouseman refused in this case to permit the corn to be measured and weighed by any person except his own weighers. The libellant employed a measurer of grain to attend for him at the warehouse where this grain was stored and see to its delivery. He was present, and overlooked the tallies of the measures and weights as they were taken from the measurers and entered by the clerk of the warehouse, during the delivery of four or five hundred bushels, and saw that they were correctly stated by him. The residue of the delivery was made by the warehouseman alone.

The cargo was also unladen at New York, from the lighter, under the superintendence of the libellant's agents only.

It is fully proved that this compound method of measurement never works out a perfect concurrence in the two results. There is invariably a difference between the quantity given by the tales of measurement and the product in weight so obtained, at times amounting to an important per centage, but more usually not exceeding about five per cent. The evidence discloses several cases of that difference. The grain is shovelled into the measure by laborers, and then a measurer strikes or evens the measure. When the grain is thrown in heavily by the shoveller, or is shaken strongly or evened loosely by the measurer in striking, the weight of the full measure will be augmented, as will the measured dimension of the mass be diminished, and consequently, the tale line of the return will be reduced, as it may be unduly increased by an opposite irregularity in filling the measure. A difference of but one pound weight to a bushel, by either mode of manipulation, would create a variance in the computation of 1800 bushels, charged as delivered, of over thirty bushels in actual quantity, not participated in mutually by vendor and vendee, but operating exclusively to the advantage of one alone. These differences are usually made to harmonize by pound allowances or estimates, and that method may be fair enough where both parties have been present at the weighing and measuring; but it is governed by no rules or data capable of securing certainty, so as to constitute it a safe law to be enforced against a stranger to the process.

The enumeration of bushels in this case was obtained by compounding the hand-measure in half bushels of the whole bulk, with the weight of the several individual measures, and the sum in pounds, so produced, determined the quantity of bushels in the cargo. This method of determining the quantity was acted upon by both parties in fixing the amount of freight, but is not conclusive between them on the question whether the lighterman delivered to the shipper the whole quantity of grain received on board the vessel; for not only the circumstances stated necessarily lead to uncertainty and variations as to quantity in every measurement made, but moreover, a cargo loaded and discharged in the manner adopted in this case is subject to other causes of wastage and diminution.

After being weighed in the loft of the store, it was, on a windy day, run down to the hold of the sloop in an open pipe or trough exposed to the air. The evidence proves that by thus fanning out the chaff and light matter, a considerable diminution of bulk necessarily ensues, and by reason of this, and of the waste in shovelling and measuring adverted to, there would almost unavoidably be found on delivery a difference between the amount returned as taken on board and the one discharged, even when the same mode of ascertaining the quantity is employed in both instances, and that difference is augmented if the measure alone is used in one case and weight in the other. Some of the witnesses attempted to make out average computations of loss or gain on these heads; but it is obvious that estimates so formed can afford no satisfactory exactness in a given instance; it must be purely matter of conjecture whether under or over five per cent. would be lost.

The respondent proved, by the two men in charge of his vessel, that one of them remained constantly on board the vessel while the grain was there, and that none of it was removed by them or with their knowledge, except by the libellant's agents; and they testify that they do not believe it would have been possible for any to have been taken out of the vessel without their knowledge.

Conceding to the libellant the case in the strongest form in which he places it, that the respondent, as lighterer, stood in the character and assumed the liability of a common carrier, and was responsible for the whole quantity of grain put in his charge, the position must be taken also with the qualification, that he must prove the quantity placed on board, and that less than that quantity was delivered out to him. Both the acts of lading and unlading were his own, to the exclusion of the respondent, and he must prove, beyond reasonable question, that he did not receive from the defendant all the grain delivered on board of his vessel. The evidence on his part may be prima facie sufficient to lay a foundation for the presumption that such is the fact, and that the deficiency arose either from loss in the transportation of the cargo, or from its embezzlement by those in charge of the vessel, or

from its unlawful abstraction by others. For losses of that character the respondent would be liable.

The testimony, however, which has been produced by the respondent, removes all the essential grounds for either presumption, and places the case upon the question of the accuracy of the measurement in lading and unlading the cargo. [For it would be most unreasonable to charge the owner for the purloining or embezzling of the grain upon a mere presumption against the positive evidence of those in charge of it as to their own acts, and the equally strong presumptions against its having been taken by others arising from the facts proved by them.] [2]

The case then stands thus: On the supposed quantity of 1857 bushels of corn, charged against the respondent, the defendant has sustained a loss of about 97 bushels, or over five per cent. of deficiency. The measurer employed by the libellant supposes that ordinarily in loading grain by weight, and delivering it by measure, the difference in quantity found would be very slight, and if there were any, it would be ordinarily rather in favor of the carrier. The excess, he thinks, would be about five bushels to the thousand. But he says that shovelling by hand, for the purpose of measurement, will sometimes make a difference against the carrier of about four ounces to the bushel, which a little exceeds five per cent. In this case he found a difference, on delivery, of five bushels, between weight and measure. Another witness, a weigher and measurer by occupation, supposes that 1800 or 1900 bushels of corn, shipped by weight, would usually deliver a less amount by 30 bushels, the quantity being determined in the same manner. If the grain is loaded in a high wind, the blowing out of chaff, he thinks, would lessen the measure considerably. He has never found the same quantity on remeasurement as on the first trial; there would always be some excess or deficiency. As a general rule, he should expect that one thousand bushels loaded by weight would deliver twelve bushels more by measure. According to his experience, the mode of shovelling may easily make a difference of one pound or more to the bushel. A third witness, Mr. Verplanck, proves that the amount put on board was determined by weighing it in lots of twenty-five bushels each. It was weighed by his clerk, without his personal superintendence. It also appears that freight was charged and paid, according to the statement of the quantity made by the weigher.

I think that upon all the proofs, the inference is just as direct and satisfactory that less than the named amount of corn was laden on board the vessel, as that the defendant delivered less than he actually received. In order to charge him with a supposed deficiency, the preponderance of evidence must be decidedly in favor of the libellant, that more grain was laden on his vessel than she delivered on her discharge.

The amount of deficiency being only about five per cent., would hardly justify an inference of misconduct or negligence against the parties sought to be charged therewith; when it may be assumed, upon presumptions equally cogent, that the difference arose from mistakes in computation of weight or measure, in the combined operations of making up the calculation of quantity, or in actual wastage in the process of loading and discharging.

I shall dispose of the case upon this view of the facts, without reference to the question raised as to the jurisdiction of the court over the subject-matter. Admitting the jurisdiction of the court, there is not sufficient evidence, in my opinion, to charge the defendant with any loss of corn while on its carriage from Brooklyn to its delivery in New York, and the libel is accordingly dismissed.

The libellant has shown a fair prima facie case on his proofs in the first instance, and I therefore impose no costs upon him. Libel dismissed without costs to either party.